CHARLES HOOVER, Respondent, v. THE NORTHERN STATES
LIFE INSURANCE COMPANY, a Corporation, and Paul and
Pauline Kinev, Defendants. THE NORTHERN STATES
LIFE INSURANCE COMPANY, a Corporation, Appellant.

(215 N. W. 921.)

**Trial — undisputed proof of agency without objection, sufficient proof of
agency.**

1. Where a corporation defendant offers undisputed proof of agency, which
is received in evidence without objection, such evidence is sufficient proof of
agency.

**Mortgages — dishonored check competent to disprove that purchase price
of mortgage was placed to plaintiff's credit.**

2. In an action against a corporation to set aside an assignment of a mort-
gage on the grounds of fraud and conspiracy, when it appears that there is
collusion between such defendant corporation, and the bank through which
the mortgage was claimed to have been purchased, a check drawn by the
plaintiff against said bank, dishonored for lack of funds, is competent testi-
mony tending to disprove defendant's claim, that the purchase price of the
mortgage was deposited in said bank to the credit of the plaintiff, and in pay-
ment of said mortgage.

**Evidence — deposit slip admissible to show agreement was executory.**

3. Where it appears that at the time of the making of a contract there was
written upon a blank bank deposit slip immediately in front of the words
printed thereon, viz., currency, silver, gold and checks the following, "contract
to be arranged as per agreement," and there is written on said slip, "notes
$7,700" which is handed to the plaintiff, such deposit slip is a part of the
agreement and is competent evidence showing that the agreement was an ex-
ecutory contract.

Opinion filed October 20, 1927. Rehearing denied November 26, 1927.

Evidence, 22 C. J. § 1027 p. 858 n. 85 New. Mortgages, 41 C. J. § 736 p. 707
n. 32 New. Trial, 38 Cyc. p. 1394 n. 43.

Appeal from the District Court, *Jansonius, J.*
Modified and affirmed.
*Hyland & Foster,* for appellant.
"In cases where fraud is charged, he who complains of fraud on the

part of another must always overcome the presumption of innocence the strongest of rebuttal presumptions, which the law raises in behalf of him who is charged with dishonesty or other moral delinquency." 1 Jones, Ev. 13." Guild v. More, 32 N. D. 432, 144 N. W. 432.

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case and never for an alleged fraud, unless fraud be made clearly to appear; never for false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them." Schinzer v. Wyman, 27 N. D. 489, 146 N. W. 898.

"Representations to be fraudulent must relate to a present or past state of facts and relief as for deceit cannot be obtained for nonperformance of a promise looking to the future." J. H. Clarke Co. v. Rice, 127 Wis. 451, 7 Ann. Cas. 505.

*Langer & Nuchols,* for respondent.

In an action for fraud the question whether the acts and conduct of which complaint is made are fitted or likely to deceive the person complaining, must in each case be determined by its peculiar and distinctive facts. Rokusck v. Insurance Co. 50 N. D. 123, 195 N. W. 300.

BURKE, J. The plaintiff brings this action against the Northern States Life Insurance Company to set aside and hold null and void a certain assignment of a mortgage, which mortgage was given to secure the payment of $9,200 on the W. $\frac{1}{2}$ of section 1, twp. 139, range 72 in Kidder county, North Dakota; and to recover from Paul and Pauline Kinev, mortgagors in said mortgage, the amount due thereon, viz., the sum of $7,700, and accrued interest thereon at seven per cent per annum.

The trial court made findings and conclusions favorable to the plaintiff, and the defendant the Northern States Life Insurance Company, alone appeals, and the case is here for trial de novo.

It is the contention of the defendant that the note and mortgage were purchased for cash and the plaintiff was given credit in the bank for $7,700. At a meeting in the bank on the second day of May 1923, there being present R. F. Marquis actuary and assistant secretary of the defendant insurance company, H. F. Rohr, the plaintiff C. E. Hoover,

and J. A. Kooker, the following letter was written to the defendant company.

Northern States Life Ins. Co.
Minneapolis, Minn.
Gentlemen:

For and in the consideration of the real estate mortgage and notes amounting to $7,700, you will kindly return to us, the certificates of deposit in your possession for a like amount.

Upon receipt of same we will forward you notes and mortgage properly assigned, I am

Yours very truly,
H. F. Rohr.

Accrued interest will be adjusted at once upon receipt of mortgage.

R. F. Marquis.

The terms of above are accepted:

C. E. Hoover.

At the same time defendant's ex. "B" was executed by H. F. Rohr and delivered to the plaintiff. The mortgage was executed on October 15, 1919.

Prior to the second day of May 1923, the First State Bank of Dawson sold insurance for the defendant. The Northern States Life Insurance Company, under an agreement that the said insurance company should deposit in said state bank the sum of $1,000 for every $2,500 of insurance sold by the said state bank of Dawson, and that prior to the second day of May 1923, the said defendant, insurance company, had on deposit in said bank under said agreement between $11,000 and $12,000.

Mr. J. A. Kooker, cashier of said bank, testified that, "at a meeting in said bank, in the presence of Mr. Barton, general agent for the solicitation and collection of premiums on life insurance of said defendant company, Mr. Rohr, vice president, of said bank, and the said J. A. Kooker, R. F. Marquis, actuary and assistant secretary of the insurance company, said that, said company was about to be examined in the state of Minnesota, and that it had more money in our bank than the examiner would stand for, and that if we could secure some real estate mortgage temporarily, after the examination they would take the cer-

tificates back again. Mr. Hoover's mortgage was mentioned, but he insisted on having cash. Mr. Rohr and myself went to see him, and I was present at the conversation between Mr. Marquis and Mr. Hoover shortly after Mr. Rohr and I saw him. After Marquis got back from Bismarck he said, that he would send to Minneapolis and get the certificates and Hoover was to hold them temporarily until after the examination." "Hoover was not there when Marquis said that." "There was no talk about the examination in Hoover's presence." "The deal with Mr. Hoover was, that he transfer or assign the note and mortgage for cash from Mr. Marquis or the Northern States Life Insurance Company." "He was to have $1,500 the first of June and the balance on July 1, 1923, and Marquis said he would settle up the accrued interest later." "Hoover was to hold the certificates temporarily as security. He never got the certificates." The deposit slip, exhibit "B" was given to Hoover at the time.

Exhibit "B" is a regular deposit slip. It does not show any currency deposited, nor silver, nor gold, nor checks, but immediately in front of the words, currency, silver, gold and checks there appears in the hand writing of Mr. Rohr, vice president of said bank, "Contract to be arranged as per agreement," and then is written on said slip in the hand writing of Mr. Rohr, "Notes $7,700."

Mr. Kooker continuing said: "the $7,700 was deposited to the credit of Mr. Hoover on the books. The insurance company sent up certificates for $5,177, and Mr. Rohr gave a check signed as agent which made up the $7,700." The court: "The point I want to get at is, could he have drawn on this $7,700?" Ans. "No, sir, he could not." 2. "Would your bank have honored checks drawn on that $7,700?" Ans. "He did not have it at the bank. Mr. Rohr gave a check for the balance to make up the $7,700 signed as agent, and Mr. Hoover was given credit on the records of the bank." Q. The court, "Did Mr. Hoover know you were doing it that way?" Ans. "I don't think he did." Ques. "Did Mr. Hoover understand that he was to have the cash?" Ans. "Yes, sir." Ques. "That was your understanding of it?" Ans. "Yes and this was done as I understand it without the consent of Mr. Hoover." Ans. "Yes, Mr. Hoover was to have the cash." Ques. "And that was stated in the presence of Hoover?" "Yes."

This testimony corroborates the testimony of the plaintiff, that they

were to pay the plaintiff on June 1, 1923, $1,500 and the balance, $6,-200 on the first of July. It is also corroborated by plaintiff's "exhibit B," which does not purport to be a deposit of currency, silver, gold or checks, but a deposit of notes.

Under the cashier's testimony the certificates of deposit amounting to $7,700 were to be sent from the office in Minnesota to the bank, and turned over to the plaintiff temporarily for security, and the writing on "Exhibit B" "as per agreement" shows that it was an executory contract. The agreement being that, $1,500 should be paid on the first of June and the balance on the first of July following, and the deposit being a deposit of notes, and not of money.

The plaintiff had some money in the said bank, and deposited money therein from time to time, and during said time he drew out $507 which is admitted to be money of the defendant insurance company, and the plaintiff relying on the agreement with the insurance company, that it would pay $1,500 on the first of June and $6,200 on the first of July 1923, drew his check on the bank for $1,564 upon which payment was refused for lack of funds.

In August 1923, the plaintiff states he saw Marquis in Dawson, with Rohr and Kooker and told him he did not comply with his agreement to pay for the mortgage, and wanted a settlement in full. Marquis said, "we will make a settlement with you tomorrow, come around to the bank in the morning and we will get together." "I went around to the bank in the morning and stayed around in the front of the bank, where the public do their business until 12:30 and they were in the back. When I went back in the afternoon Marquis was gone. He left a check for $368.31 interest paid on mortgage." This testimony is corroborated by Mr. Kooker. It is clear from this evidence that the findings of fact and conclusions of law of the trial court are fully sustained.

Defendant contends, that the admission of plaintiff's exhibit "B" was error. It was a part of the agreement, made at the time, and it is a part of the transaction, showing that it was an executory agreement. Defendant also contends, that there was no evidence that R. F. Marquis was the actuary and assistant secretary of the defendant, the Northern States Life Insurance Company, and that one C. A. Barton was agent of the said company for the collection of premiums on life insurance. The defendant offered in evidence the deposition of the said Marquis

and the deposition of the said C. A. Barton which proved that said Marquis was, at the time of the transaction between the plaintiff and the defendant actuary and assistant secretary, and that said Barton was general agent for the solicitation and collection of premiums on life insurance. Defendant further contends, that the admission of the testimony relating to plaintiff's exhibit "C" and the admission of exhibit "C" was error. Exhibit "C" is the check for $1,564, which plaintiff drew on the sixth day of July, 1923, and which was not paid, for want of funds in the bank.

It appears that at the time of the agreement, on the second day of May 1923, Mr. Rohr, vice president of the bank, was to look after the matter for the defendant insurance company when the certificates of deposit were returned to the bank. This arrangement was made at that meeting in the presence of Marquis, Barton, Hoover, Rohr, and Kooker and, thereafter, the insurance company sent certificates aggregating $5,177 and Mr. Rohr, for the insurance company, gave a check signed by himself as agent for the difference between $5,177 and $7,700.

The testimony in relation to exhibit "C" the $1,564 check, corroborates the testimony of the cashier, that the plaintiff was given credit in the bank for $7,700, but could not draw on it, and it tends to prove the conspiracy between the officers of the insurance company and the officers of the bank to get possession of the plaintiff's mortgage, and such testimony and exhibit were therefore admissible.

It is the contention of the defendant, that at the time of the agreement there was interest earned on the mortgage, but not due, which the defendant agreed to pay to the plaintiff, and that on the second day of August 1923, the defendant deposited to the credit of the plaintiff in said bank the said interest in the sum of $368.31. If this was money advanced by the defendant to the plaintiff, the defendant is entitled to recover that amount from the plaintiff in addition to the money deposited to the plaintiff's credit which he checked upon. On the other hand, if this $368.31 of interest money was paid by the mortgagor to the insurance company, and then paid by the insurance company to the plaintiff, the plaintiff is entitled to keep the said sum, it being interest on his mortgage. The record, however, is in such shape that it is difficult to tell whether this money was advanced by the insurance company,

or was paid by the mortgagor to the insurance company and deposited to the credit of the plaintiff by the defendant.

The record of the bank introduced by the plaintiff shows a mistake in the judgment, in the amount of the checks drawn on the plaintiff's credit in the bank. According to the bank record, after the deposit was made, the plaintiff checked out the sum of $1,040.32 which included an overdraft of $110.15, and the $368.31 interest on the mortgage, and that would be the amount the plaintiff would be required to pay the defendant on receipt of the assignment of the note and mortgage, in case the interest was not paid by the mortgagor, but was advanced and paid by the defendant.

Since it appears from the record that the $368.31 was interest earned on the mortgage, but not due at the time the agreement was made, we conclude that it was advanced by the defendant and should be included in the amount the plaintiff should pay to the defendant.

It is accordingly held, that on receipt of the assignment of the said note and mortgage the plaintiff shall pay to the defendant the sum of $1,040.32, but on account of the unsatisfactory condition of the record an application can be made by the plaintiff to open the case for the purpose of offering proof on the question of whether the payment of the $368.31 was made by the mortgagor or the insurance company. If the proof shows that it was advanced by the insurance company such company is entitled to the said $1,040.32 but if paid by the mortgagor to the insurance company it should be deducted from the $1,040.32 and the difference $672.01 is all the defendant is entitled to. As a matter of course, the plaintiff is entitled to recover of the mortgagor all the interest due on the mortgage. As thus modified the judgment is affirmed.

BIRDZELL, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.